Grace M. WELLS, Plaintiff-Respondent,

v.

George GOFORTH, Jr., and Eileen Goforth, Defendants-Appellants.

No. 54226.

Supreme Court of Missouri, En Banc.

June 9, 1969.

Rosecan & Popkin, Mortimer A. Rosecan, Alan E. Popkin, St. Louis, for respondent.

Robert H. Burns, Clayton, for defendants-appellants.

DONNELLY, Judge.

In this jury-tried action for damages resulting from a fall at defendants' home, plaintiff received a verdict in the amount of $12,500, and defendants appealed to the St. Louis Court of Appeals. Upon application, we ordered the case transferred to this Court and it will be determined here "the same as on original appeal." Rule 84.05(h), V.A.M.R.

Plaintiff, a social guest, slipped and fell on an ice-covered portion of defendants' front porch as she left defendants' home. Plaintiff concedes that, as a social guest, she occupied the status of a licensee. Wolfson v. Chelist, Mo.Sup., 284 S.W.2d 447.

In Glaser v. Rothschild, 221 Mo. 180, 184, 185, 120 S.W. 1, 2, 3, 22 L.R.A.,N.S., 1045 (1909), this Court said:

"(a) In such cases as this the root of the thing, the deciding question, is: Do the facts raise a duty, a breach of which is shown? * * * There are such sure and clear words in the law in that behalf

that all doubts are resolved, and one who runs may read. The general rule is that the owner or occupier of premises lies under no duty to protect those from injury who go upon the premises as volunteers, or merely with his express or tacit permission, from motives of curiosity or private convenience, in no way connected with business or other relations with the owner or occupier. * * * A bare licensee (barring wantonness, or some form of intentional wrong or active negligence by the owner or occupier) takes the premises as he finds them. His fix may be likened unto that of one who, buying lands, buys stones; or, buying beef, buys bones; or, borrowing a coat, takes it with holes in and buttons off—that is, in the use of his bare license he takes on himself the risk of perils from defects in the premises. Mere permission, without more, involves 'leave and license,' but bestows no right to care. If A. give B. leave to hunt mushrooms for his table in A.'s field, and B. fall into a ditch or uncovered pit, and is harmed, no duty was raised, no breach is made, and hence no action lies. As put by way of illustration in the books, suppose A. owns a sea view, a cliff, and gives B. permission to walk on the edge of the cliff for pleasure or air, it would be absurd to contend that such leave cast on A. the burden of fencing the cliff to keep B. from falling off."

The rule was established in the Glaser case that a licensee takes premises as he finds them. Exceptions to the rule were recognized as "wantonness, or some form of intentional wrong or active negligence by the owner or occupier."

In Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679 (1933), another exception appeared. The Court recognized the rule but announced that the possessor must not knowingly let the licensee go into a *hidden peril.*

In Anderson v. Cinnamon, 365 Mo. 304, 308, 282 S.W.2d 445, 447–448, 55 A.L.R.2d 516, 521 (1955), this Court (En Banc) said:

"A leading case on the duty of a possessor of land is Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 3, 22 L.R.A.,N.S., 1045 holding that leave and license 'bestows no right to care.' In following this case, in Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679, 687, as to a possessor's duty to a licensee, we said: 'the only duty of the owner is that he must not willfully or wantonly injure him, or knowingly let him go into a hidden peril, or otherwise, by an affirmative negligent act, injure him after his presence is or should be discovered in a position of danger. He owes him no affirmative duty of care to protect him.' We think the explosive material cases are a good example of what is meant by letting one go into hidden peril and some of them are set out in the footnotes to 45 C.J. 796 which we cited in connection with that statement. See also 65 C.J.S. Negligence § 38, p. 504; Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo.Sup., 246 S.W.2d 742 and cases cited concerning duty as to explosives. Thus it is unusual hazard that requires warning to licensees. Harmful chemicals, explosives and other inherently dangerous materials developed by modern science and industry, no doubt, would be within this rule at least under circumstances where licensees could not be expected to know of their presence or effect. * * *"

In Anderson v. Cinnamon, supra, this Court declined to extend the *hidden peril* exception to situations other than those involving harmful chemicals, explosives and other inherently dangerous materials. "Thus it has been said that in Missouri a landowner will incur no liability so long as he is inactive and warns the licensee of known ultrahazardous conditions and dangerous substances." 33 Mo. Law Review 93, 94. See also Ziegler v. Elms, Mo.Sup., 388 S.W.2d 839 (1965), and Richey v. Kemper, Mo.Sup., 392 S.W.2d 266 (1965).

██ We are of the opinion that plaintiff cannot recover under the law stated in Anderson v. Cinnamon, supra. An icy porch is not an ultrahazardous condition

and a failure to warn of the condition is not active negligence. A failure to warn is negative in nature.

In 33 Mo. Law Review 93, supra, the case of Cupp v. Montgomery, Mo.App., 408 S.W.2d 353 (1966), is reviewed. As noted, the Cupp case represents a struggle by the St. Louis Court of Appeals to reach a just result within the framework of existing law as announced by this Court. We have concluded that the existing law is outmoded and should be changed. See Annotation, 55 A.L.R.2d 525, and 65 C.J.S. Negligence § 63(35), p. 706.

The rule stated in 2 Restatement, Law of Torts, First, § 342 (1934), is as follows:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

(i) to make the condition reasonably safe, or

(ii) to warn them of the condition and the risk involved therein."

The rule stated in 2 Restatement, Law of Torts, Second, § 342 (1965), is as follows:

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to

warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved."

Section 342 of the second Restatement represents a change from the first Restatement by condensing it slightly, by the addition of Clause (c), and by the addition of the words "or has reason to know." The words "reason to know" are used "to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." 1 Restatement, Law of Torts, Second, § 12 (1965). This change of language "was made to emphasize the objectivity of the test of actual knowledge." 65 C.J.S. Negligence § 63(35), p. 707.

We decline to adopt the rule stated in 2 Restatement, Law of Torts, Second, § 342 (1965). We adopt the rule stated in 2 Restatement, Law of Torts, First, § 342 (1934). We do not believe a possessor of land should be subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon unless the possessor is himself aware of the condition. We do believe, and hold, that a possessor's "knowledge" may be proved by circumstantial evidence. "But the circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow, so that the conclusion so reached is not the result of guesswork, conjecture or speculation * * *." Herrman v. Daffin, Mo. App., 302 S.W.2d 313, 316.

Plaintiff's Exhibit 20, which is a statement taken by plaintiff from defendant George Goforth, purports to show that defendant George Goforth had actual knowledge of the existence of the patch of ice before plaintiff's fall. Plaintiff attempted to use this statement to impeach

defendant George Goforth, but the trial court sustained defendants' objections thereto. (The question raised by these attempts is hereinafter discussed.) At the close of plaintiff's evidence, she offered Exhibit 20 in its entirety. She did not inform the trial court that she was offering portions of Exhibit 20 as admissions against interest. *Under these circumstances,* we will not convict the trial court of error in excluding Exhibit 20. Aquamsi Land Co. v. City of Cape Girardeau, 346 Mo. 524, 537, 142 S.W.2d 332, 339. The admissions against interest appearing in Exhibit 20 cannot assist plaintiff on this appeal.

■ We are of the opinion that plaintiff, under the evidence admitted, cannot recover under the rule announced in this opinion because there is no evidence from which it may be found, without resorting to guesswork, conjecture or speculation, that defendants *knew* of the icy condition of the porch before the fall. Plaintiff argues, in effect, that defendants "should have known" of the icy condition of the porch under the existing facts and circumstances. To accept plaintiff's argument would be to place upon defendants a duty owed business visitors. The duty owed licensees and business visitors is different. See Harbourn v. Katz Drug Co., Mo.Sup., 318 S.W.2d 226, 228, 229. We hold that plaintiff, under the evidence admitted, cannot recover.

We, therefore, consider the final question in the case. Plaintiff called defendant George Goforth as an adverse witness under § 491.030, RSMo 1959, V.A.M.S., and plaintiff's Exhibit 20 was identified by defendant George Goforth as the written statement taken from him before trial. Plaintiff did not seek to introduce portions of the statement as admissions against interest. Plaintiff undertook to use the statement to impeach defendant George Goforth. She was not permitted to do so by the trial court. We assume the trial court followed the rule that a party cannot directly impeach the testimony of his own witness even though he be the other party to the action.

■ In Missouri, any party to a civil action may compel any adverse party to testify as a witness in his behalf. Section 491.030, RSMo 1959, V.A.M.S. However, the rule is well-established in Missouri that a party may not directly impeach the credibility of his own witness, even if the witness is an adverse party. See Chandler v. Fleeman, 50 Mo. 239; Imhoff & Company v. McArthur, 146 Mo. 371, 48 S.W. 456; Black v. Epstein, 221 Mo. 286, 120 S.W. 754; Frank v. Wabash R. Co., Mo.Sup., 295 S.W.2d 16; and Hutchinson v. Steinke, Mo.App., 353 S.W.2d 137.

This rule has drawn severe criticism. In Wigmore on Evidence, 3rd Ed., Vol. III, § 916, it is said: "If there is any situation in which any semblance of reason disappears for the application of the rule against impeaching one's own witness, it is when the *opposing party is himself called by the first party,* and is sought to be compelled to disclose under oath that truth which he knows but is naturally unwilling to make known. To say that the first party guarantees the opponent's credibility * * * is to mock him with a false formula; he *hopes* that the opponent will speak truly, but he equally perceives the possibilities of the contrary, and he no more guarantees the other's credibility than he guarantees the truth of the other's case and the falsity of his own. To say, furthermore, that the first party, if he could impeach at will, holds the means of improperly coercing the other * * * is to proceed upon a singular interpretation of human nature and experience, and to attribute a power which the former may perhaps wish that he had but certainly cannot be clothed with by this or any other rule. There is therefore no reason why the rule should apply at all."

We believe the criticism is particularly justified in a situation involving the use of a prior statement which contradicts testimony given by the adverse party at the trial. "Since impeachment by prior self-contradiction would be excluded [by the

rule], the opponent could tell his story as favorably for himself as he pleased, and no prior inconsistent statements could be used in impeachment; so that unless one took the risk of abiding by what the opponent should choose to say, it would be preferable not to call him at all; thus the main purpose of the enabling statute making him compellable is defeated or encumbered." Wigmore on Evidence, supra, Vol. III, p. 431, n. 1.

Section 491.030, supra, gives a party the right to compel an adverse party to testify. If this statute is to be given any practical effect, the introducing party should be permitted to call an adverse party as a witness without assuming the risk that the adverse party will testify contrary to prior statements. The rule stated in Chandler v. Fleeman, supra, should no longer be followed in situations involving the use of prior statements which contradict testimony given by the adverse party at trial.

We reach the following conclusions:

(1) Under the evidence admitted in the case, plaintiff cannot recover and the judgment must be reversed;

(2) Under the law adopted in this opinion, there is a possibility that plaintiff can establish legal liability against defendants, and the case should be remanded for new trial. (See Grissom v. Handley, Mo.App., 410 S.W.2d 681, 690, 691.)

(3) Defendants do not question the amount of the verdict nor the propriety of plaintiff's damage instruction. Therefore, the new trial should be limited to the issue of liability. Grissom v. Handley, supra, 410 S.W.2d 681, 691.

The judgment is reversed and the cause remanded for a new trial on the issue of liability only. If, upon retrial, the verdict is for plaintiff, the trial court shall enter judgment for her in the amount of $12,500.

HENLEY, FINCH, SEILER and MORGAN, JJ., concur.

STORCKMAN, J., concurs in result in separate opinion filed.

HOLMAN, C. J., concurs in result.

STORCKMAN, Judge (concurring in result).

If we are in need of a new rule as to the liability of a possessor of land to a licensee, I have considerable doubt as to the advisability of adopting Section 343 of the original Restatement, Torts, instead of the revision published fairly recently. I am inclined to prefer the language of Section 343 employed in Restatement, Second, Torts, or a modification embodying what is worth saving of the Missouri decisions.

Further, I doubt if the facts of this case properly call for the abrogation of the evidentiary rule that a party vouches for the credibility of a witness that he puts on the stand. The plaintiff's trouble seems to stem from the manner in which the statements against interest were offered. The defendants' written statement appears to have been sufficiently identified for it or material parts thereof to be admissible as written admissions against interest. See State ex rel. State Highway Com'n of Mo. v. Kimmell, Mo., 435 S.W.2d 354, 360[13]; White v. Burkeybile, Mo., 386 S.W.2d 418, 422[2]; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400, 410–411[5–10]; Missouri Digest, Evidence ⊂⇒221(1, 2), and Witnesses ⊂⇒379, 380(5, 6), 387, and 388(3). I am not convinced that the present evidentiary rule has been demonstrated to be unsatisfactory by the circumstances of this case. We should be as certain as we can that the change does not open the way for practices as much or more undesirable than what we have.

It seems to me the plaintiff in this case is creating a sort of paradox. She wants to destroy the credibility of a party defendant on whose statements against interest she intends to rely to establish her case. All she needs to do is to identify the paper and offer it in evidence as an admission

against interest. That constitutes substantive evidence under existing law and impeachment as well if the party has testified in a manner contrary to the admission. Carpenter v. Davis, Mo., 435 S.W.2d 382, 384[1]; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400, 410–411 [5, 9, 10].

As must appear from the foregoing, I have not been able to explore the facts or research the law as much as I should to cast a well-informed vote. However, I am not opposed to giving the plaintiff another opportunity to present her case if the ends of justice will be served by so doing. Owings v. White, Mo., 391 S.W.2d 195, 197[1]; Radford v. Radford, Mo., 388 S.W.2d 33, 40[13]; Downing v. Dixon, Mo., 313 S.W.2d 644, 652[16]; Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 423 [8, 9]; Missouri Digest, Appeal and Error ☜1177.

Therefore, I concur in the result.