Lawrence MATTHEWS, Plaintiff-Respondent,

v.

TRUXAN PARTS, INC., a Corporation, Defendant-Appellant.
No. 7761.

Springfield Court of Appeals.

Missouri.

July 11, 1959.

———◆———

John H. Fairman, Wm. P. Sanford, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for appellant.

Farrington & Curtis, E. C. Curtis, Springfield, for respondent.

McDOWELL, Judge.

This action was brought in the Circuit Court of Greene County, Missouri, for rescission of a contract of purchase of a motor vehicle trailer and recovery of the purchase price of $1,150 and interest. The cause was tried by the court without a jury and judgment rendered for plaintiff for $1,150, the amount of the purchase price and interest in the amount of $166.75. Defendant appealed.

Plaintiff's petition in substance alleged that defendant represented to plaintiff that it was the owner of a B & J semi-trailer and offered to sell same to plaintiff; that relying upon said representations plaintiff agreed to and did purchase said trailer from defendant for the sum of $1,150 and that the purchase price has been duly paid by plaintiff; that though often requested the defendant failed and neglected to deliver a certificate of title and still fails and refuses to do so; that possession of said trailer was taken in a replevin action from plaintiff by one, Gale Cummings, who holds the certificate of title, so that plaintiff is unable to tender the possession back to defendant; that plaintiff tenders to defendant the defense of the replevin action and tenders and assigns to defendant all right, title and interest or claim he may have, in and to said trailer or judgment rendered in the replevin action and prays that the contract of purchase be cancelled and rescinded and for judgment against defendant for the sum of $1,150 with interest from the ———— day of July, 1956, and costs.

Defendant's first amended answer denies that it sold plaintiff the trailer in question, and denies that it ever owned or had any interest therein, and denies that it received and retained the purchase price of the trailer from the plaintiff as its own.

The answer states that the possession of the trailer in question was delivered to plaintiff and Herbert E. Matthews under a lease agreement with option to buy December 2, 1955, and remained in their possession until it was replevied under an action brought by Gale Cummings on the ———— day of July, 1956; that on December 24, 1955, while plaintiff and Herbert E. Matthews were in possession of said trailer, Herbert E. Matthews signed a purchase order for a "1950 White Truck" from defendant and at that time defendant agreed to finance the purchase of said trailer if purchased by Herbert E. Matthews under the lease agreement with Gale Cummings.

That on January 3, 1956, Herbert E. Matthews and Lawrence Matthews executed their joint note to Missouri White Motors, Inc., in payment of the white truck and for payment due Gale Cummings for the trailer purchased from him, and, secured said note by chattel mortgage on the "1950 White Truck" and a 1949 Hobbs trailer represented to defendant as the trailer purchased from Gale Cummings; that pursuant to said representation defendant did on January 3, 1956, and January 5, 1956, pay to Gale Cummings the amount due him on the sale of the trailer to Matthews; that Gale Cummings accepted the check payable to him with endorsement thereon "Bal. on Matthews trailer".

The answer denied any failure on the part of defendant to deliver to plaintiff a proper certificate of title and alleged that any failure to receive a proper certificate of title was due to plaintiff's neglect, laches and wrongdoing, and that of Gale Cummings. The answer further alleged that after the defendant made the loan to Herbert E. Matthews and plaintiff, relying upon their representations that they had purchased the trailer from Gale Cummings on January 17, 1956, Gale Cummings secured and caused to be assigned to the Missouri White Motors, Inc., a certificate of title to the 1949 Hobbs trailer representing the title to be to the trailer purchased by Herbert E. Matthews and plaintiff and the title to the Hobbs trailer included in the chattel mortgage, given by the Matthews, to secure the note executed January 3, 1956. That simultaneously therewith defendant reassigned to plaintiff said title and defendant acquired no interest in the trailer other than security for the loan; that plaintiff procured a new title to the Hobbs trailer and had same issued in his name; that said trailer has never been in defendant's possession; that it had no opportunity to check the title thereto and that it was the duty of plaintiff to determine whether or not the title so issued in his name was the true certificate of title to trailer so purchased and

mortgaged to defendant; that it was plaintiff's duty to take prompt and immediate steps to protect his interest and defendant's security for the monies paid by defendant to Cummings for plaintiff; that plaintiff's continued use and possession of the trailer and certificate of title for approximately six months constitutes waiver and estoppel of plaintiff's action. The answer admits the alleged replevin suit brought by Gale Cummings to recover possession of the trailer in question and that Gale Cummings claims to hold the true certificate of title to the trailer and the right to possession. It pleads that in plaintiff's answer in the replevin action he alleged that he was the owner of said trailer and entitled to possession thereof; that the pendency of said action does not constitute legal grounds for alleged rescission as to defendant and denies that plaintiff can rescind without joinder of Herbert E. Matthews, he being a joint purchaser and party to the alleged agreement.

The answer further alleged that plaintiff is engaged in construction work on Table Rock Dam; that the trailer delivered to him by Gale Cummings on ——— day of December, 1955, up until the day it was replevied, ——— day of July, 1956, was used by plaintiff in his employment and that he received the profits thereon, to-wit, the reasonable rental value of $100 per month; that to allow full recovery of the purchase price would permit plaintiff to retain the profits from the use of said trailer and would constitute unjust enrichment.

The answer further alleged that defendant rented a used trailer to plaintiff for a period of three months at an agreed value of $100 per month on ——— day of October, 1956; that said rent has not been paid and prays judgment for $300 for the rental value thereof.

The prayer in the answer is that plaintiff's action be dismissed and that defendant recover a judgment for $300 rental value of its trailer.

We here state from the record the evidence offered relative to the issues presented: In December, 1955, and January, 1956, John McDaris was President of defendant-company, then known as Missouri White Motors, Inc. Plaintiff, who was then nineteen years of age, accompanied by his father, Herbert E. Matthews, went to the office of defendant, December 24, 1955, to talk to John E. McDaris about buying a tractor and trailer. Prior to that date, plaintiff had obtained possession of a trailer from Gale Cummings under a lease purchase agreement. By the terms of this agreement, plaintiff was to pay Cummings $100 per month rental with option to buy the trailer at a price of $1250, in which event the rental payments were to be applied on the purchase price and plaintiff paid Cummings $100 on this agreement. Cummings was not a dealer in the trailer business but did own a number of trailers, including the one delivered to plaintiff.

At the meeting with John McDaris on December 24, 1955, plaintiff agreed to buy a tractor from defendant at a price of $1,300. H. E. Matthews gave this testimony: "Lawrence told John McDaris that the tractor done the work, that he was satisfied with it, that he would buy it, but he wanted a paint job on it. Johnny said, 'For $100.00 more, I will put a paint job on it.' And he—the agreed price between the two of them was $1300.00, altogether. It was $1200.90 for the tractor, $100.00 for the paint job. Johnny said, 'I will give you a loaner to take back and use while I am painting this one.'

"Q. Now, was there anything said at that time about this trailer? A. And Lawrence told him, Lawrence said to Johnny, he says, 'I paid this $100.00, and there would be $1150.00 more to pay, at $100.00 a month'. He says, 'Now, Johnny, you have been a friend. If you can buy that for less, and put this into the same note, we will put this all in the same note, and I can make my payments at one place, instead of two. If you can buy that for

less and make a profit, then you go ahead and buy the trailer and put it altogether in one note, and I will pay the notes altogether.'

"Q. Did Mr. McDaris have anything to say about that at that time?—What was his answer? A. 'Oh', he says, 'sure I will try to. I will try to make some money on that trailer.' I told him that was fine."

Present at the time of this conversation were John McDaris, his wife, Mary the plaintiff and plaintiff's father. At date of trial both John and Mary McDaris were deceased.

On January 17, 1956, plaintiff and his father returned to defendant's office, and at that time McDaris told plaintiff he had bought the trailer and had the title.

Herbert E. Matthews gave this testimony:

"Q. Tell the Court what that discussion was. A. Johnny says, 'Lawrence, I have bought the trailer. Here is the title. I have got the title. The note is all made out for the bank. You make your payments at the bank'.

"Q. Did he say whether or not the trailer had been added into the note? A. Yes, sir, that is what he said, and he had the title right there. And then he made out an application for a new title. Lawrence signed it. Mary McDaris made out the application, and Lawrence signed it. And he says he sent it off for another title, and it would go to the Citizens Bank".

The payments to be made at the bank on the note were to be $300 a month. Mr. Matthews gave this testimony:

"Q. Now, Mr. Matthews, do you know whether or not your son paid any money to Missouri White Motors on January 17, 1956? A. Yes, sir, wrote him a check; wrote a check out for $200.00."

Plaintiff's exhibit (A) is a certificate of title McDaris showed to plaintiff on that day. It is a title to a 1949 Hobbs trailer

and had been delivered and assigned to Missouri White Motors by Gale Cummings. This title was reassigned on the same date by Missouri White Motors to plaintiff.

On December 24, 1955, defendant gave plaintiff an invoice of the tractor purchased from defendant, which invoice is in evidence as plaintiff's exhibit (E), which shows the purchase price of the tractor to be $1300, $200 to be paid on January 10th. A pink copy of this invoice was kept in the personal files of John McDaris. This copy was identified at the trial as plaintiff's exhibit (F). On the bottom of this exhibit is a notation: "payments, $200.00, $100.00, if I buy trailer.".

This notation was not shown on plaintiff's exhibit (E) or the office copy. In the opinion of H. E. Matthews, those words were in the handwriting of John McDaris.

Edward F. McDarris, father of John McDaris, and President of defendant-company at the time of trial, said he was not familiar with his son's handwriting but stated that he thought this notation on the bottom of exhibit (F) was written by his son.

Exhibit (H) itemizing the charges on the truck and trailer purchased by plaintiff, was in the files of Missouri White Motors. Edward McDaris said he thought the exhibit was probably in his son's handwriting and Noah Ward, business manager of defendant, said it looked like John's handwriting. On this exhibit the trailer is listed at $1,150 and the tractor $1,100. The evidence shows plaintiff had made a down payment of $200 on the tractor. Interest is shown at $233.50 on which amount the bank was to receive $97.30 and insurance and filing charges were $85. These figures total $2,568.50, the same amount as in the note signed by plaintiff and his father. The Citizens Bank bought the note from Missouri White Motors for approximately $2,-470. This note was later paid in full by plaintiff. When title to the trailer was transferred to defendant by Gale Cum-

mings, Cummings received payment in the sum of $1,000 from defendant.

William G. Voris, bookkeeper for defendant, testified that he had searched the records of the company and had found no invoice for a 1949 Hobbs trailer, although in the normal operations of the company, such invoice records were kept. He stated Fred Cummings and Gale Cummings were brothers and their accounts were carried jointly in the name of Gale Cummings. Other employees of defendant testified they had never seen the trailer on the premises of defendant.

It is not contended by defendant that it furnished plaintiff a title to the trailer. The evidence regarding the title shows that exhibit (B), being a title to a 1949 Hobbs trailer, was the only title furnished by defendant to plaintiff. In June, 1956, the possession of the trailer was taken from plaintiff in a replevin action, brought in Taney County by Gale Cummings, and was never thereafter in plaintiff's possession. At the time of the replevin action, the evidence showed the trailer to be in better condition than when purchased from defendant. The trailer was later inspected in Springfield and found to have a different serial number from that on the title furnished to plaintiff by defendant. Gale Cummings had title to this trailer. On the day following the filing of the replevin action, plaintiff's father, acting in behalf of plaintiff, demanded that defendant furnish clear title to the trailer or return the purchase price. Subsequently, a letter was written by plaintiff's attorney to the defendant tendering the defense of the replevin suit

The evidence regarding plaintiff's father's interest in the transaction between plaintiff and defendant shows: Plaintiff was 19 years of age. Plaintiff, himself, negotiated the purchase of the trailer from defendant. The note for the purchase price was signed by H. E. Matthews at request of John McDaris because plaintiff was a minor. The only reason the father signed

the note was to guarantee its payment. Herbert E. Matthews had no title or interest whatsoever in the trailer. The purported title to the trailer was assigned by defendant to plaintiff, alone. The entire purchase price was paid by plaintiff and Herbert E. Matthews received no portion of the income from the rented trailer and did not guarantee plaintiff's rental purchase agreement with Cummings and no longer is required to sign notes with his son.

The evidence shows that defendant let plaintiff have a trailer from July 13th to October 26th to use while they were getting the title to the trailer replevied straightened out. Defendant testified that the reasonable rental value of this trailer was $100 per month. Herbert E. Matthews testified that defendant loaned the trailer to his son, the plaintiff.

On June 5, 1958, the trial court filed its memorandum and decree which reads:

"The plaintiff's suit is for rescission of a completed sale of a trailer and for return of the purchase price, on the grounds of breach of warranty of title. The defendant has raised a defense of the Statute of Frauds, and also defends on the grounds that the transaction was not a sale by defendant corporation to the plaintiff but simply an accommodation loan to enable the plaintiff to purchase the trailer from another party.

"The Court finds that this transaction does not come within the Statute of Frauds, since it was a completed sale, and that a rescission and suit for the return of the purchase price is not barred by the Statute of Frauds. Although counsel did not brief the point, it would further appear to the Court that the executed transfer of title by defendant corporation would satisfy the requirements of the Statute. of Frauds as to a memorandum in writing signed by the party to be charged.

"This leaves the sole question as to whether or not the defendant was the vendor of the trailer in question, as contended by the plaintiff, or whether it was simply a lender of money to the plaintiff to enable him to purchase the trailer, as contended by the defendant. The evidence discloses that at the time of the transfer of title to this trailer the plaintiff was in possession of it under a lease agreement with the purported owner; that at the suggestion, and possibly request, of the plaintiff the defendant paid the owner for the trailer, took an assignment of title to itself, and reassigned "the title as a registered dealer to the plaintiff. Defendant corporation, which was engaged in the business of buying and selling such vehicles, charged the plaintiff a $100 profit on this transaction, and then financed the purchase price and made a substantial profit on the financing. It appears to the Court that this was certainly more than a loan or accommodation to the plaintiff, and was a regular business transaction for which the defendant received a regular profit as in any other business transaction. If this is true, the defendant is not entitled to retain the purchase price of the trailer if the plaintiff, in fact, received nothing.

"Wherefore, it is ordered, adjudged, and decreed that the plaintiff have and recover from the defendant the sum of $1,150, and $55 interest; costs taxed to the defendant."

In our opinion we will refer to respondent as plaintiff and appellant as defendant, the positions they occupied in the lower court.

In the first assignment of error defendant complains of the action of the trial court in overruling its motion to dismiss, to strike, to make more definite and certain and to dismiss at the close of the evidence.

Under this alleged error it is first contended that inconsistent remedies are intermingled in the same action.

To support this contention defendant cites King v. Guy, Mo.App., 297 S.W.2d

617. This was a jury-tried case to rescind a contract of sale under which plaintiff purchased an automobile from defendant. On page 620 [1], our court stated:

"For such alleged breach of defendant's express oral warranty * * * plaintiff might have elected either (a) to have rescinded the contract of sale, returned the Packard to defendant, and recovered whatever he (plaintiff) had paid therefor, or (b) to have kept the Packard and recovered, in an affirmative action or by set-off or recoupment when sued by defendant for the sale price, the damages occasioned by such breach of warranty; but, plaintiff could not have pursued or intermingled the two inconsistent remedies at the same time, for the first is a disaffirmance, while the latter is an affirmance, of the contract of sale. * * *"

The same rule of law is declared in Conroys Inc., v. Brooks, Mo.App., 50 S.W. 2d 708, 710 [3], and in Albert v. Kopplin Molding Corp., 8 Cir., 247 F.2d 107, 110 [5]. In the latter case the court stated:

"Rescission and damages for breach of contract are inconsistent remedies, and an election to pursue one remedy, prosecuted to final judgment, bars the other remedy. King v. Guy, supra. The nature of a party's cause of action or defense must be determined by his pleadings. * * *"

■ In order to determine the nature of the cause of action stated in plaintiff's petition we consider the facts pleaded and the relief sought. Lebcowitz v. Simms, Mo. App., 300 S.W.2d 827, 830 [4]; Kemp v. Woods, 363 Mo. 427, 251 S.W.2d 684.

■ The language of a pleading is to be given its plain and ordinary meaning and such interpretation as fairly appears to have been intended.

In King v. Guy, supra, 297 S.W.2d at page 624 [10–13] the law was stated:

"* * * In determining the cause of action sought to be alleged, the petition must be read 'from its four corners' [State ex rel. Dutcher v. Shelton, 249 Mo. 660, 691, 156 S.W. 955, 963] and in its entirety; and, when it is reasonably possible to do so, effect should be given to every part of the petition. We may consider not only the facts pleaded but also the relief sought. Kemp v. Woods, supra, 251 S.W.2d loc. cit. 688(4), and cases there cited. '(I)n the final analysis, the question becomes what is the gravamen of the complaint and the gist of the action, in the resolution of which we "cannot resort to mere guesswork or speculation to determine whether a particular cause of action is pleaded" and we must be concerned by what the petition alleges or fails to allege, * * *. State ex rel. Hendrix v. American Surety Co. of New York, Mo.App., 176 S.W.2d 67, 69(1), 70(6).' Hilderbrand v. Anderson, supra, Mo.App., 270 S.W.2d 406, loc. cit. 410. See also Section 509.250, RSMo 1949, V.A.M.S., and Hunter v. Sloan, 195 Mo.App. 69, 73–74, 190 S.W. 57, 59(2)."

In Dugan v. Trout, Mo.App., 271 S.W.2d 593, 597, the law is stated: "* * * we are not unmindful of the statutory injunction that 'all pleadings shall be so construed as to do substantial justice.' Section 509.-250; DeVault v. Truman, 354 Mo. 1193, 194 S.W.2d 29, 32. 'But the pleadings continue to be of the greatest utility in defining the issues of a case' (Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25, 28); * * *"

■ Applying the foregoing principles to the petition at bar leaves us with no doubt that it should be construed as predicated on rescission (or disaffirmance) of the contract of sale. To reach a contrary conclusion, it would be necessary for us to rob by construction, language used of its plain and obvious meaning, or of the fair, reasonable, and obvious conclusion to be deducted therefrom, and to ignore the substantial portions of plaintiff's petition which clearly charge, in emphatic and unequivocal terms an attempted rescission of the contract of sale. This, we may not do. Hoeller v. St. Louis

Public Service Co., Mo.App., 199 S.W.2d 7, 10(5–7); King v. Guy, supra, 297 S.W.2d at page 624 [14].

We find there is no merit in this first alleged contention of the defendant that plaintiff intermingled inconsistent remedies. Schroeder v. Zykan, Mo.App., 255 S.W.2d 105.

The next contention made under this assignment of error is that plaintiff can recover only on the cause of action asserted in his petition.

▬ To sustain this contention defendant cites Gash v. Mansfield, Mo.App., 28 S.W. 2d 127; King v. Guy, supra; and Speckard v. Mendenhall, Mo.App., 253 S.W. 166. We agree with this statement of law.

It is further contended under this alleged error that, under plaintiff's theory of the case, he did not become a bona fide owner of the trailer on January 3, 1956, by making payment to defendant without a delivery of the trailer and the passage of the duly assigned certificate of ownership at the time, there being no valid contract to rescind or affirm.

Section 301.210 RSMo 1949, V.A.M.S. is cited in support of this contention. Paragraph (4) of this section reads:

"It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

Schroeder v. Zykan, Mo.App., 255 S.W.2d 105 is cited. On page 110 [2–4] of the opinion, this law is stated:

"As to the truck title, defendant represented that he would give plaintiff title to the septic tank truck and equipment. Certainly the representation was material, * * *. At the time the representation was made, and at the time fixed for the closing of the deal, defendant did not have a certificate of title to the truck, and for weeks thereafter was unable to transfer the certificate of title to plaintiff. It is a reasonable inference from the evidence that the representation was made with intention that plaintiff rely, and that plaintiff did rely thereon to his damage, in that he paid $2,000 to defendant. Section 301.210 RSMo 1949, V.A.M.S., makes the sale of a used motor vehicle fraudulent and void unless at the time of delivery there shall pass between the parties a certificate of ownership, duly assigned. * * * Defendant had no title thereto, and consequently could not transfer title to plaintiff. The sale was illegal, fraudulent and void. We cannot agree with defendant that he had 'title' to the truck because he had a 'special interest' therein, and the exclusive right to the ownership thereof. * * *"

▬ We agree with defendant's contention that there really was no valid contract to rescind or affirm since the delivery of a certificate of title, properly reassigned by the defendant in the instant case, was a necessary act to complete a contract of sale. The failure to so deliver said title made the contract executory.

▬ Under the law and the facts in the instant case no title passed to the trailer in question to plaintiff. This is true, not because of any judicial reason, but, because of the absolute and mandatory provisions of § 301.210 [4] RSMo 1949 plainly so states. Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605, 608, 609; [6–8]. In this opinion our court stated:

"* * * it has been recognized in numerous Missouri cases that, so long as the contract of sale remains executory, i. e., before assignment and delivery of a proper certificate of title [Winscott v. Frazier, Mo.

App., 236 S.W.2d 382, 383], the buyer may repudiate the contract and may recover what he has paid, provided he acts within a reasonable time and returns, or offers to return, the motor vehicle in substantially as good condition as it was when he received it. Strictly speaking, an action by the buyer of a motor vehicle to recover what he has paid under a *void* contract of sale does not involve rescission or the rules relating thereto, for rescission contemplates a *voidable but existing* contract. Schroeder v. Zykan, Mo.App., 255 S.W.2d 105, 111(8), and cases there cited. However, our appellate courts frequently have referred, interchangeably and indiscriminately, to *rescission* as well as *repudiation* of a *void* contract of sale for a motor vehicle, perhaps by reason of the fact that, to recover the purchase price paid under such void contract, the buyer 'must perform the same acts which in the case of a voidable contract would amount to a rescission.' Schroeder v. Zykan, supra, 255 S.W.2d loc. cit. 112." (See cases cited in footnote 10).

So, under the law as declared by our appellate courts, there is no merit in this contention.

The final contention under this alleged error is that the trial court erred in permitting Herbert E. Matthews and Lawrence Matthews to testify over objections of the defendant, they being, in fact, parties to the alleged agreement with John McDaris, deceased.

■ The record evidence shows that upon objection plaintiff was not permitted to testify. Herbert E. Matthews, father of plaintiff, was permitted to testify for the reason he was not an interested party in the lawsuit. The law, as declared in State ex rel. State Highway Commission v. Jacobs, Mo.App., 281 S.W.2d 597, is to the effect that a corporation can only speak and act through its agents, the agent represents the corporation, and, if, after death of an agent of a corporation, it were admissible for a party to come in and testify to a contract made with such deceased agent,—to testify to facts unknown to the corporation, or any of its other agents—it is easy to see that the corporations would be without protection, where others in like circumstances are fully protected. Herbert E. Matthews signed the note and chattel mortgage, given by plaintiff to defendant in payment of the trailer in question, for the reason that the purchaser, Lawrence Matthews was a minor and defendant requested the father to sign to make it legal. This note, given in purchase of the trailer, has long since been paid by plaintiff, the title was transferred, or the attempt to transfer was made to plaintiff and the newly assigned title was in plaintiff's name. Plaintiff contracted to buy the trailer, not Herbert E. Matthews, therefore, we hold under the facts in this case the trial court properly permitted Herbert E. Matthews to testify as to the trans-action in the purchase of the trailer. Beckers-Behrens-Gist Lumber Co. v. Adams, Mo.App., 311 S.W.2d 70, 73.

In allegation of error numbered II, defendant complains of the action of the trial court in overruling his motion for an order to add Herbert E. Matthews as party-plaintiff and in failing to dismiss plaintiff's petition on the filing of the disclaimer by Herbert E. Matthews in the cause. It is contended that Herbert E. Matthews was the contracting party in the agreement relied upon in plaintiff's petition; that all papers constituting the alleged agreement were signed by him as principal; that he was the maker of a note given in consideration of the purchase of the·trailer and was a joint party in interest.

To sustain this contention §§ 507.030, 507.050, 401.017 [7], and 401.024 RSMo 1949 V.A.M.S., are cited. Section 507.030 provides that persons having a joint interest shall be made parties and be joined on the same side as plaintiff or defendant and that, when a person who should be joined with plaintiff refuses to do so, he may be made a defendant. It, likewise, provides that when a complete determination of the con-

troversy cannot be had without the presence of other parties, the court may order them to be brought in by an amendment of the petition or by a supplemental petition and new summons.

■ Under the facts at bar we think it unnecessary to quote further from authorities cited. The trial court properly found from the evidence that Herbert E. Matthews was not a party in interest in the matters involved in this action. He did sign the note and mortgage given by plaintiff for the purchase price of the trailer at the request of the defendant for the reason that the purchaser was a minor, nineteen years of age. The evidence clearly shows that contract of purchase of the trailer was made between defendant's agent and the plaintiff; that the purchase price was paid by the plaintiff; that the purported title to the trailer was made by defendant's reassignment of a title to plaintiff. Herbert E. Matthews, in no sense, had any interest whatsoever in the subject matter of this action. He was not a proper party and the trial court must be sustained in its ruling upon defendant's motion to make him a party-plaintiff and in failing to dismiss plaintiff's petition.

It is further contended under this alleged error that Herbert E. Matthews was a proper party in the action for the reason that he was liable as a maker of the note given in consideration of the alleged agreement notwithstanding his arrangement, if any, with his son, as accommodation party.

■ There can be no question but what Herbert E. Matthews was liable as an accommodation maker on the purchase price note but that note had been paid and the trial court properly held that the note is no part of this lawsuit.

■ Under allegation of error numbered III, the action of the trial court is complained of because the court misconstrues and fails to decide the issues made

by the pleadings and omits the relief prayed for in the petition.

In his memorandum and decree, which is a part of the record, the trial court states that plaintiff's suit is for rescission of a completed sale of a trailer and for the purchase price on the grounds of breach of warranty of title. The court stated the sole question was whether or not defendant was the vendor of the trailer in question or simply a lender of money to the plaintiff to enable him to purchase the trailer as contended by the defendant.

The prayer of the petition was for the return of the purchase price of the trailer plus interest. The judgment of the trial court followed the prayer of the petition and the issues made by the pleadings.

On page 7 of defendant's brief this statement is made: "This action was filed by plaintiff on December 17, 1957, and asks recision by the Court and alleges that he could not tender the tractor back to defendant because of the replevin action filed by Cummings about July 1, 1956. * *"

By this argument we think that the nature of the cause of action is admitted by defendant.

We find no merit under this contention.

■ We will not discuss assignments of errors numbered IV, V, VI, and VII. The matters complained of under these assignments have already been discussed and further they have been waived by failure to argue the same. Supreme Court Rule 1.08, 42 V.A.M.S.

Under error numbered VIII complaint is made of the action of the trial court in overruling defendant's motion to dismiss at the close of the evidence because the petition fails to state a cause of action.

■ Sufficiency of the petition to state a cause of action may be raised for the first time in the appellate court. It was

not waived by the defendant pleading over. § 512.160 RSMo 1949, V.A.M.S.

A party seeking relief by way of petition is only required to set forth a plain statement of facts showing he is entitled to relief and a demand for judgment. Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71, 78 [1]; New Civil Code § 509.-050 RSMo 1949, V.A.M.S.

In determining if a petition states a claim or cause of action, the averments of the petition are to be given a liberal construction, according the averments their reasonable and fair intendment—fair implication should be indulged from the facts stated. So considered, a petition should be held sufficient if its averments invoke substantive principles of law which entitle plaintiff to relief. A petition is not to be held insufficient merely because of a lack of definiteness or certainty in allegation or because of informality in the statement of an essential fact. Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52, 54 [1]; § 509.250 RSMo 1949, V.A.M.S.; Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo.Sup., 246 S.W.2d 742; Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25; Slicer v. W. J. Menefee Const. Co., Mo.Sup., 270 S.W.2d 778.

Our courts have held that under § 301.210 [4] RSMo 1949, V.A.M.S., so long as the contract of sale of the motor vehicle or trailer remains executory, i. e., before assignment and delivery of proper certificate of title, the buyer may repudiate the contract and recover what he has paid, provided he acts within a reasonable time and returns, or offers to return, the motor vehicle in as good condition as it was when he received it. Boyer v. Garner, Mo.App., 15 S.W.2d 893, 895 [3]; Perkins v. Bostic, 227 Mo.App. 352, 56 S.W.2d 155; Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605, 608 [6–8]; King v. Guy, supra, 297 S. W.2d at page 620 [1]; Stone v. Kies, Mo.

App., 227 S.W.2d 85; Schroeder v. Zykan, Mo.App., 255 S.W.2d 105.

In the instant case the petition alleged that the defendant represented to plaintiff it was the owner of a B & J semi-trailer and offered to sell same to plaintiff; that plaintiff, relying upon the representations, purchased the trailer from defendant and paid the purchase price of $1,150; that defendant neglected and failed to deliver to plaintiff a certificate of title and still fails to do so.

It alleged that the trailer was taken from the possession of plaintiff by virtue of a writ of replevin by the holder of the certificate of title; that plaintiff is unable to tender possession to defendant the property so purchased because of defendant's wrongful failure to deliver a certificate of title to plaintiff. The pleader then tenders his defense to the replevin suit and assigns to defendant all rights, title and interest in such trailer including his rights in any judgment in the replevin action. The prayer is that the contract of purchase be cancelled and rescinded and for judgment of $1,150, the purchase price, with interest.

We think all the essential elements necessary to state a cause of action may be fairly implied from the petition except the failure to allege the return or tender of the trailer in as good condition as when he received it. Repudiation and restitution, or offer to return, are essential elements of a cause of action of this kind. It is true that plaintiff in the case at bar in pleading the wrongful acts of defendant in making it impossible for him to tender back the possession of the trailer to defendant failed to plead that the trailer was in as good condition when the possession wa taken from plaintiff by the replevin action as when received from defendant. However, we hold that such failure was not fatal in this case because of the provisions of section 509.500 RSMo 1949, V.

A.M.S., that, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Plaintiff introduced evidence, without objection, of the repudiation of the contract of purchase and that the trailer was in as good condition as when received from defendant when taken from his possession in the replevin suit. Under the pleadings and the evidence offered as to the condition of the trailer at the time of the repudiation and tender, the court will look upon the pleadings as having been amended and will consider that the fact has been pleaded. Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349; Schroeder v. Zykan, supra, 255 S.W.

2d at page 112 [12]; Rogers v. Crown Coach Co., Mo.App., 68 S.W.2d 729; Payne v. White, Mo.App., 288 S.W.2d 6, 9.

■ Unless the petition wholly fails to state a cause of action an attack on it after verdict is unavailable. Martin v. Southwestern Bell Telephone Co., 344 Mo. 83, 125 S.W.2d 19 [1].

Under the above authorities we find against defendant on this issue.

Judgment affirmed.

RUARK, J. concurs.

STONE, P. J., not sitting.